## WESTCHESTER FIRE INS. CO. OF NEW YORK v. CANNON.

### No. 13075.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 7, 1934.

Rehearing Denied Feb. 1, 1935.

Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for appellant.

T. B. Coffield, of Bowie, for appellee.

POWER, Justice.

In 1915, appellee, L. M. Cannon, bought a farm in Jack county. Upon this farm was a four-room house. He insured this house against loss by fire at the time he purchased the farm with the American Equitable Assurance Company in the sum of $800. At the same time he obtained a fire insurance contract with the same company on his household furniture for $800. The contracts were obtained through Walter Isbell, agent of the company at Jacksboro. These policies were renewed from time to time, the last renewal beginning on January 10, 1932. A fire destroyed the house and furniture on November 22, 1932. The American Equitable Assurance Company paid in full the amount of the insurance to appellee. In 1930, appellee built an addition to his house and some time

after the addition was built purchased additional furniture. After such addition was built and furniture purchased, he obtained through the same agent, Walter Isbell, an additional policy of insurance on the house in the sum of $1,000 and an additional policy of $200 on the furniture. This latter insurance contract was with appellant, Westchester Fire Insurance Company of New York. This contract with appellant was renewed at least once; the last renewal was dated to begin on April 15, 1932. At the time of the fire in November, 1932, the policy of the American Equitable Assurance Company was in force by its terms as well as the policy of appellant.

This suit was instituted by appellee, Cannon, against appellant, Westchester Fire Insurance Company of New York, to recover on the $1,200 fire insurance contracts, and at the conclusion of the trial the court instructed the jury to return a verdict for appellee in the sum of $1,000, appellee having in open court waived his claim to the $200 policy on the furniture, and from that judgment appellant has appealed.

■ Appellee testified in his own behalf that Walter Isbell was agent for the company and that he relied on Mr. Isbell as such; that he had been dealing with Mr. Isbell for a number of years; that he knew nothing about insurance and that he depended upon Mr. Isbell to keep him insured; that he did not know what company his policies were in; that $4.80 remained unpaid on the premium of the policy in suit at the time of the fire; that most of the time he left his policy in Mr. Isbell's office for safe-keeping and told Mr. Isbell to notify him when the policy expired; that he permitted Mr. Isbell to select the insurance company and depended upon him to put the insurance in a good company; that after Isbell had placed the insurance he would make arrangements with him about the payment of the premiums; and that when a policy expired he depended on Isbell renewing it and billing him for the premium.

Walter Isbell testified that he formerly represented the Westchester Fire Insurance Company; that he had known L. M. Cannon about fifteen years; that at the time Mr. Cannon talked with him with reference to insurance Mr. Cannon did not know the names of any of the fire insurance companies; that he selected the company in which to place the insurance; that as to the amount of insurance, it would be discussed between assured and Walter Isbell and they would try to arrive at the correct amount;

that if it became necessary to transfer the insurance from one company to another, he, Walter Isbell, had charge of this; that the Westchester Fire Insurance Company never authorized him to extend any credit to L. M. Cannon.

In this state of the evidence, had not the questions been objected to and the objections sustained, M. C. Spann, a witness for appellant, would have testified that he was special agent for the Westchester Fire Insurance Company and that he notified Walter Isbell on August 17, 1932, to cancel the Westchester policy of fire insurance, the subject of this suit, and that the witness Walter Isbell agreed to surrender the policy of insurance and accepted from the special agent the unearned premium on the policy. A proper bill of exception was taken to the court's refusal to permit this evidence, based on the ground that it was not shown that appellee, Cannon, knew of this attempted cancellation of the policy, appellant contending that by reason of the facts outlined Isbell became the agent of appellee, Cannon, for the purpose of agreeing to the cancellation of the policy, and therefore the rejected evidence was admissible. The evidence shows that Cannon did not know of the attempted cancellation of the policy until some time after the fire.

This court cannot agree, under the facts of this case, that Walter Isbell became the agent of appellee, Cannon, for the purposes contended. The facts in the case of Security National Fire Insurance Co. v. Gulf Ins. Co. (Tex. Com. App.) 41 S.W.(2d) 17, 18, seem applicable to this case, and in that case the court used the following language:

"It seems to be established in this state that where the insured has, in terms, authorized another (who is also the agent of a number of insurance companies) to procure and keep up insurance on the insured's property—the selection of the company or companies being left to the agent's discretion—the collateral authority to substitute one policy for another, and, in behalf of the insured, to waive notice of or to consent to the cancellation of the policy displaced in effecting such substitution, is implied. Dalton v. Ins. Soc. (Tex. Com. App.) 213 S. W. 230; National Fire Ins. Co. v. Oliver (Tex. Civ. App.) 204 S. W. 367 (writ refused). In such a case, the implied authority of the agent, with regard to cancellation, has reference to the effectual substitution of one valid policy for another and is dependent thereon. Obviously, a general and independent authority, respecting the cancellation of policies, cannot

be reasonably implied, when a cardinal purpose of the insured, as manifested by the nature of the authority conferred by him on the agent, was to keep his property protected by insurance. * * *

"We conclude that, under the facts of this case, the consent of Bain for the Security Company policy to be canceled, and the notice to him of such cancellation were not binding on Landamore; and therefore the attempted cancellation was ineffective."

The Kentucky Court of Appeals, in discussing a situation much like that now before this court, held, in the case of Stuyvesant Ins. Co. v. Barkett, 226 Ky. 424, 11 S.W. (2d) 87, that notice of cancellation of an insurance policy to a broker intrusted by the assured with the duty of keeping the property insured and of obtaining other insurance in lieu of canceled policies is notice to insured, provided the broker substitutes another policy, holding, in effect, that such notice to a broker merely authorized to procure insurance and to keep insurance, and who does not substitute another policy, is not notice to the assured. In the case at bar, there was no substitution of other policies, and 'the appellee, through no fault of his, was led to believe that the insurance was in force until after the house was burned. The agent Walter Isbell was the agent of the company and does not claim that as such agent he notified Cannon of the cancellation.

█ The policy of insurance in question stipulates generally for insurance against loss by fire without stating any exceptions, but subsequently states that the company shall not be held liable for loss caused by invasion, insurrection, riot, civil war, or commotion. The policy was not attached to plaintiff's pleadings, neither were the exceptions pleaded by plaintiff. Under this state of the pleadings, appellant contends that the burden is upon the plaintiff to plead and prove that his loss does not fall within any of the special exceptions of the policy.

Appellant's propositions perhaps would be sound if appellee had attached his insurance policy to his petition, or if he had pleaded the exceptions in the policy affirmatively and not negatively. The proposition submitted does not apply to cases in which the face of the petition does not show that the insurer is exempted from liability from loss resulting from the specific causes listed in the policy. See American Insurance Union v. Daines et al. (Tex. Civ. App.) 15 S.W.(2d) 97, 98, where it is stated: "The contention of plaintiff in error, that the petition of defendants in error did not state a cause of action against it, seems to be on the theory that it was necessary for defendants in error to have alleged, and they did not, that, after the policy was issued to Daines, he did not violate the stipulation set out in the statement above that it (the policy) should be 'null and void' if he died in consequence of an intemperate use of alcohol or narcotics. Pelican Ins. Co. v. Troy Co-operative Ass'n, 77 Tex. 225, 13 S. W. 980, is cited as a case supporting the contention. In that case it was held to be necessary to the statement of a cause of action on a fire insurance policy, made an exhibit to the plaintiff's petition and containing a stipulation that the insurer should not be liable for loss by fire caused by means of a hurricane, to allege that the fire did not occur from the excepted cause. It may be the holding in that case would have been applicable in this one, had the policy defendants in error sued on been made an exhibit to their petition. But it was not, and the sufficiency of the petition therefore must be determined from allegations therein without reference to stipulations in the policy. It is plain, we think, from those allegations as shown in the statement above, that the petition stated a cause of action and was not subject to the general demurrer to it urged by plaintiff in error."

█ Independent of this statement of the law, it will be noted that appellant's general demurrer was not called to the attention of the court and no order was rendered thereon. It was therefore waived. Phoenix Ins. Co. v. Boren, 83 Tex. 97, 18 S. W. 484.

Appellant contends that no proof of loss was furnished the insurance company as prescribed by the policy, and that the cause should be reversed for that reason. It is true that there is a paragraph in appellant's answer which pleads, in effect, that no proof of loss was furnished as required by the terms of the policy, but this pleading is not sworn to. The evidence shows that the loss was total.

█ Article 5546, Rev. Statutes, provides, in substance, that in cases where notice of claim for damages is required it shall be presumed that such notice has been given unless want of notice is specially pleaded under oath. This statute applies to insurance contracts. See London & Lancashire Ins. Co. v. Higgins (Tex. Civ. App.) 68 S.W.(2d) 1056.

█ Furthermore, the evidence in this case shows that the loss was total, consequently proof of loss is dispensed with. See American Central Ins. Co. v. Terry (Tex. Com.

App.) 26 S.W.(2d) 162, 164, wherein it is stated: "The rule is well settled in this state that when the loss is total, it is a liquidated demand, and proof of loss is not necessary. Suit can be maintained on the policy as on any other liquidated demand, if the property on which the policy was issued was real property, and that it had been totally destroyed. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. [578] 582." See, also, Hanover Fire Ins. Co. v. Nash (Tex. Civ. App.) 67 S.W.(2d) 452.

Under another proposition appellant contends that the proof of total loss in the trial court was limited wholly to the appellee's testimony, and this being true, it was error for the court to fail to submit the question of total loss for the reason that the assured was an interested witness and that the weight and credibility of his testimony is for the jury. If the evidence of appellee was not true, it could have been readily discredited. He testified, in substance, that the house was a frame house; that none of the walls were left standing immediately after the fire; that all was burned down to the foundation; that the floor burned; that there was none of the flooring whatever left; that the brick chimney tumbled over; that there was no remnant left; that the foundation as left had no value; that it was soft and would crumble; and that the condition of the property at the time of the trial was the same as immediately after the fire.

An exception to the general rule applicable to the case now before this court is stated in the case of Luling Oil & Gas Co. v. Edwards (Tex. Civ. App.) 32 S.W.(2d) 921, 926 (writ dismissed). It was there announced: "The rule that the uncorroborated testimony of interested witnesses, although not controverted, does not conclusively establish a fact, is not applicable where the nature of the testimony is such that it might readily be discredited, if it were not true, and the adverse party offers no disparaging proof whatever. There were no circumstances whatever in the record which would throw any doubt or suspicion upon the testimony of plaintiff that he actually paid to the party named $140. We therefore think the testimony presented no issuable fact in that regard." See, also, Fidelity & Casualty Co. v. Branton (Tex. Civ. App.) 70 S.W.(2d) 780, 781.

The judgment was announced and rendered for $1,000 with interest thereon from date of judgment at the rate of 6 per cent. per annum. The evidence shows the loss to be total and that the fire occurred on November 22, 1932. The policy provides that the loss under the policy was payable sixty days after proof filed, therefore judgment should have adjudged interest from the sixtieth day after the total loss or from the 21st day of January, 1933. Hanover Fire Ins. Co. v. Nash (Tex. Civ. App.) 67 S.W.(2d) 452. The judgment is reformed to provide for interest at 6 per cent. per annum from January 21, 1933, and, as so reformed, affirmed.