## BENDER v. METTLER. (No. 361.)

Court of Civil Appeals of Texas. Eastland. April 26, 1929.

Rehearing Denied May 24, 1929.

Goggans & Allison and L. H. Welch, all of Breckenridge, for appellant.

Robert E. Bowers and Will R. Saunders, both of Breckenridge, for appellee.

HICKMAN, C. J. This suit was brought by the appellee, Ben B. Mettler, against appellant, C. M. Bender, for damages for an alleged breach of a contract, a copy of which was attached to the petition. The substance of the contract was that Bender was opening a mercantile establishment adjoining the store of C. M. Bender & Co., in Breckenridge, to be styled Breckenridge Bargain House, and that Mettler was to become the general manager of such new enterprise. For his services Mettler was to be paid a salary of $275 per month. In addition to this salary, he was to share in the profits. The provision of the contract with reference to his right to share in the profits was as follows: "That at the end of twelve months from the date this contract becomes in effect, parties hereto are to make inventory of stock and party of the second part shall receive, in addition to said salary of $275.00, the sum of ten (10%) per cent. of the net profits derived from the conduct of said business and subject to the terms and items herein set. forth."

The "terms and items therein set forth" consisted of certain fixed expenses to be charged to the business, including a salary to Bender, rent on house, rent on fixtures, expenses incurred in going to market, etc. Un-

der the contract the term of employment began on August 1, 1925, and extended over a period of 12 months to August 1, 1926. With further reference to the manner of estimating Mettler's profits at the termination of the contract, it was stipulated therein as follows: "That on the 1st day of August, A. D., 1926, this contract shall terminate and a complete inventory taken of all stock of merchandise and assets, except fixtures, at a price agreeable to both parties hereto, and after deducting the items hereinafter set forth party of the first part shall pay party of the second part his ten (10%) per cent. of the net profits derived from the conduct of said business, same to be paid in cash."

On October 15, 1925, 2½ months after the contract went into effect, Mettler instituted this suit against Bender, alleging that on or about October 3d Bender willfully and maliciously breached the contract and ousted him from his business. The suit was for the salary which would become due to Mettler under the terms of the contract, less the sum of $575 theretofore paid him as salary, and for the profits which he alleged he would have received under the contract, had it not been breached. The petition alleged that profits to Mettler in the amount of $750 had accrued up to October 3d, the date of his discharge, and that during the remainder of the life of the contract such profits to Mettler would amount to the sum of $5,000.

The case was tried and judgment entered on June 16, 1926, 1½ months prior to the end of the contract term. In answer to special issues, the jury found that Bender discharged Mettler on October 3, 1925; that in discharging Mettler, Bender did not act in good faith; that Mettler did not use reasonable diligence to secure other employment after October 3, 1925; that, had he done so, he could have earned $1,400, in addition to what he actually earned, between October 3, 1925, and the date of the trial.

The ninth and tenth special issues submitted to the jury were as follows:

"Ninth. What amount of net profits, if any, had the Breckenridge Bargain House earned from the 1st day of August, 1925, to and including the 3d day of October, 1925? Answer: $1,940.63.

"Tenth. What amount of net profits, if any, would the Breckenridge Bargain House have earned from the 3d day of October, 1925, to date, if it had remained in the charge of said plaintiff? Answer: $8,247.52."

Upon these findings judgment was rendered in favor of Mettler against Bender for the sum of $1,657.98. The amount of the judgment was arrived at by adding 10 per cent. of the profits of the business for the two periods of time inquired about in issues 9 and 10, and to this sum adding the amount of salary which would have been due Mettler up to the date of trial, and subtracting therefrom $1,400, which the jury found Mettler could have earned, and the further sum of $280 shown by the testimony to be the amount which Mettler actually earned after October 3, 1925, in other employment. From this judgment, Bender has appealed.

The brief contains 50 assignments of error, but, as we have determined that the case must be retried, and most of the alleged errors will doubtless not arise upon another trial, we shall not find it necessary or desirable to enter into a discussion of the many questions presented. Since the term of the contract has now expired, amended pleadings will be filed eliminating most of the questions presented here.

Under the terms of the contract, the unit of time for computing profits was one year. This period was indivisible. Appellee was entitled to profits only in the event it was disclosed, at the end of the year, after an inventory was made by the parties, and after allowing certain designated expenses of the business, that a net profit was realized from the year's business. The issues of whether profits were realized between August 1 and October 3, 1925, and between October 3, 1925, and the date of the trial, June 16, 1926, were, at most, but mere evidentiary issues. No recovery could be predicated upon these issues. On the question of Mettler's right to profits, the ultimate and controlling issue was whether, under his management, the business would have produced net profits over a period of one year, not over any part of a year. It is readily conceivable that the business may have been prosperous for a portion of the year, and yet, at the end of the year, an inventory should reveal that, taking into consideration the entire year, no profits whatever were realized. Appellee in his brief states what we conceive to be the correct theory of Mettler's right to damages on account of profits in this language: "Plaintiff Mettler, having been wrongfully discharged, was entitled to measure his damages by what he would have received under the broken contract, had it been continued."

The jury did not determine what Mettler would have received under his broken contract had it been continued. Mettler recovered a judgment for profits without a finding from the jury that there would have been any profits at all. The ultimate issue of fact necessary to warrant a judgment for profits was not submitted to, or determined by, the jury, and there is, therefore, no support in the jury's verdict for the judgment rendered as to profits. The question, as we view it, is the same as that decided by this court in the case of Ratcliffe v. Ormsby, 298 S. W. 930, error refused by the Supreme Court in Ormsby v. Ratcliffe, 1 S.W.(2d) 1084.

Appellee contends that, since his suit was tried before the expiration of the term of

the contract, he was limited by law to the amount of profits accruing to date of trial. He therefore insists that it was proper to ascertain the profits to that date and enter judgment thereon. This contention, as we view it, has the effect of substituting for the measure of damages provided in the contract a new and different one. The parties, by their contract, both created and measured Mettler's right to profits, and there is no basis for awarding judgment for profits except as provided therein. A finding by the jury that profits would have resulted to Mettler on August 1, 1926, had Bender not breached the contract, is an indispensable prerequisite to the rendition of a proper judgment for any profits at all.

There is an important question of practice presented. It is disclosed by a bill of exceptions that the trial court allowed each side one hour for argument before the jury; that the opening argument for the plaintiff, Mettler, was made by Hon. E. W. Bounds, one of his attorneys; that Mr. Bounds' argument covered a period of only 18 minutes, during which argument he discussed only special issues Nos. 1, 4, 5, and 6, and did not undertake any discussion whatever of the other six special issues submitted by the court. Immediately upon the closing of this argument the appellant Bender, in open court, through his attorneys, objected to said argument for the reason that it did not fully open the case, in order that he might have opportunity to reply thereto, and moved the court to require the plaintiff to present whatever argument he had on the remaining issues. Exception was taken to the action of the court in overruling this motion and objection. The defendant, Bender, then, through his attorneys, presented his argument to the jury, after which Hon. Robert E. Bowers, one of the attorneys for the plaintiff, Mettler, made the closing argument before the jury, covering a period of approximately 42 minutes, in which closing argument he discussed all of the remaining special issues, which had been submitted by the court to the jury, and which had not been discussed by his cocounsel in the opening argument. Rule 36 for the governing of district and county courts, 142 S. W. xx, provides: "In all arguments, and especially in arguments on the trial of the case, the counsel opening shall present his whole case as he relies on it, both of law and facts, and shall be heard in the concluding argument only in reply to the counsel on the other side."

It is not, and cannot be, denied that this rule was violated in the manner of presenting this case to the jury, but it is urged that no harm resulted therefrom. We think the right guaranteed by this rule is a very valuable one to a litigant. The violation of a valuable right being affirmatively shown in the record, a reversal of the judgment should follow as a matter of course, unless it affirmatively appears from the whole of the record that no injury resulted therefrom. It does not devolve upon one whose right has been violated to show injury, but rather upon the other party to show affirmatively that no injury resulted. We have had occasion more than once to apply and follow the decision of the Commission of Appeals in the case of Bell v. Blackwell, 283 S. W. 765, which lays down the general rule that, if there is any reasonable doubt of the harmful effect of improper argument, the case will be reversed, unless it affirmatively appears from the record that such error was harmless. We can see no distinction, in so far as the application of this rule is concerned, between the error presented here and that based upon an improper argument. Since some of the six issues not discussed by appellee's attorney in his opening argument were answered contrary to appellant's contentions, we cannot say that the error was harmless. But it is insisted that appellant should have requested permission to make another argument to the jury after the close of appellee's closing argument. To adopt that method of procedure would be to disturb the orderly processes of trials and substitute a new rule of practice for the one handed down by the Supreme Court for the guidance of trial courts.

The judgment of the trial court will be reversed, and the cause remanded.